## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THOMAS WAYNE CUNNINGHAM,

      Plaintiff,

v.                                                                                    CV 13-0142 JP/WPL

STATE OF NEW MEXICO,
SECOND JUDICIAL DISTRICT ATTORNEY
(SHANNON MURDOCK MILES),
THE CITY OF ALBUQUERQUE, NEW MEXICO,
ALBUQUERQUE POLICE OFFICER, PETER HACKETT,
DUFF RYAN, CHIEF RAY SCHULTZ,

      Defendants,

                                  consolidated with

THOMAS WAYNE CUNNINGHAM,

      Plaintiff,

v.                                                                                    CV 13-0314 JP/WPL

STATE OF NEW MEXICO,
SECOND JUDICIAL DISTRICT ATTORNEY
(SHANNON MURDOCK MILES),
THE CITY OF ALBUQUERQUE, NEW MEXICO,
POLICE OFFICERS PETER HACKETT & DUFF RYAN,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

After entering a guilty plea on a trafficking charge in state court, Thomas Cunningham

filed a lawsuit in the District of New Mexico against several defendants, including Peter Hackett

and Duff Ryan, two police officers involved in the arrest that uncovered evidence used against

him. The district court eventually dismissed the claims relating to that arrest without prejudice,

holding that Cunningham was barred from pursuing them under the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), which prohibits civil actions for damages when success on a claim might suggest the invalidity of a conviction. Now that his conviction has been reversed, Cunningham has again filed suit against Hackett, Duff, and the City of Albuquerque (hereinafter "the City"). However, Defendants contend that many of Cunningham's claims are now untimely and seek their dismissal, filing a motion for summary judgment on several state law claims, a motion to dismiss the state law claims, and a motion to dismiss several claims under 42 U.S.C. § 1983.

This matter has been referred to me to propose findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 3.) Having considered the pleadings, the parties' submissions, and the relevant law, and otherwise being fully advised in the matter, I find that several of Cunningham's state law claims are untimely and that Defendants' motion for summary judgment on those claims should be granted. However, I also find that Defendants' motion to dismiss Cunningham's state law claims under Federal Rule of Civil Procedure 12(b)(6), filed after the summary judgment motion, is itself untimely, and I further find that the § 1983 claims challenged by Defendants were timely filed. Therefore, I recommend that Defendants' motion for summary judgment be granted, that Defendants' motion to dismiss Cunningham's state law claims be denied as untimely, and that Defendants' motion to dismiss certain § 1983 claims be construed as a judgment on the pleadings and be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Cunningham has filed three pleadings raising the claims at issue here. The first complaint was filed in the District of New Mexico in 2007. *See Cunningham v. Albuquerque Police Dep't*, No. 07-cv-0411 RB/RHS (hereinafter "2007 Lawsuit"), Doc. 1 (D.N.M. Apr. 26, 2007). After

that complaint was dismissed and certain other events occurred, Cunningham filed a second complaint in the Second Judicial District Court of New Mexico, which was later removed to the District of New Mexico. *See Cunningham v. New Mexico*, No. 13-cv-314 (hereinafter "State Lawsuit"), Doc. 1 Ex. A (D.N.M. Apr. 3, 2013) (filed in state court July 11, 2012). That action was later consolidated with the instant case, which was filed with this Court in February 2013. (Doc. 13.) Each of these cases involves a late 2005 traffic stop, a subsequent arrest, and the actions taken by Hackett and Ryan during these events.

## I.      The December 2005 Arrest

The following well-pleaded facts are accepted as true for purposes of these motions. On December 14, 2005, Cunningham left his room at an Albuquerque, New Mexico hotel with a friend and started walking to the friend's car when he noticed two police cars in the hotel parking lot. (Doc. 1 at 2.) As the two men approached the friend's car, one of the police cars drove past them, and Cunningham states that the driver was watching them as he passed by. (*Id.*) The two police cars disappeared shortly thereafter. (*Id.*) Cunningham and his friend then drove to the friend's house. (*Id.*)

After a short time, Cunningham drove his friend's car back to the hotel, visited his room briefly, and then returned to the car with the intention of going to the store. (*Id.* at 3.) As he pulled out of the parking lot, two police cars pulled out behind him and activated their sirens and lights (*see id.*); it is implied that these are the same police cars that Cunningham had observed earlier (*see* State Lawsuit, Doc. 1 Ex. A at 2). Cunningham pulled into another hotel parking lot, and the police officers (including Hackett and Ryan) parked near him, approached with guns drawn, and ordered Cunningham out of the vehicle. (Doc. 1 at 3.) Ryan asked Cunningham a series of questions regarding his identity, the owner of the car, and the insured status of the car;

Cunningham states that he answered the questions and told the officers that the insurance paperwork was above the sun visor. (*Id.*) Ryan then arrested Cunningham on a signal from Hackett, purportedly because Cunningham lacked insurance documentation. (Doc. 1 at 3; Doc. 1 Ex. B at 1-2.) While Ryan handcuffed Cunningham, Hackett searched the car and discovered crack cocaine. (Doc. 1 at 3; State Lawsuit, Doc. 1 Ex. A at 2.) Cunningham was taken into custody, and several hours later Ryan issued warnings for displaying the car's license plate in the rear window and for driving an uninsured vehicle. (Doc. 1 at 3-4.)

Cunningham was arraigned on January 13, 2006 (*see* Doc. 1 Ex. A at 5), and criminal proceedings commenced against him on one charge of trafficking a controlled substance with intent to distribute (*see id.* at 1).[1] After Cunningham failed to have the evidence against him suppressed, he agreed to a consolidated plea that would allow him both to appeal the denial of his suppression motion and to pursue a related civil action. (Doc. 1 at 4.)

## II.    The 2007 Lawsuit

On April 26, 2007, shortly after his motion to suppress was denied (*see id.*), Cunningham filed suit in the District of New Mexico against Hackett, Ryan, and the Albuquerque Police Department ("APD") (2007 Lawsuit, Doc. 1). In his complaint, Cunningham claimed that the defendants harassed and discriminated against him because of his race, performed an unlawful and pretextual traffic stop, filed a false criminal complaint and planted evidence, and unlawfully arrested him. (*Id.* at 7-8, 12.) Cunningham also brought several claims against the same defendants relating to a separate incident that is not the subject of the instant lawsuit. (*See* 2007 Lawsuit, Doc. 1 at 7-11.)

---

[1] Another charge not relevant to the instant case was dismissed after Cunningham entered his plea to the trafficking charge. (*See* Doc. 1 Ex. A at 1.)

After APD was dismissed from the lawsuit (2007 Lawsuit, Doc. 64 at 4-5), and pursuant to an order of reference (2007 Lawsuit, Doc. 3), the referral magistrate judge ordered the remaining defendants to file a *Martinez* report addressing Cunningham's claims (2007 Lawsuit, Doc. 97 at 2-3). In the same order, the magistrate judge expressed concern that Cunningham's claims might be barred under *Heck*, 512 U.S. 477. (*Id.* at 2.)

After the matter was fully briefed, the magistrate judge determined that all of Cunningham's § 1983 claims regarding the December 2005 incident were barred under *Heck*, concluding that "a judgment for damages on these claims in Plaintiff's favor would necessarily imply the invalidity of Plaintiff's conviction." (2007 Lawsuit, Doc. 113 at 4.) The magistrate judge therefore recommended that those claims be dismissed without prejudice. (*Id.* at 4-5.)

Cunningham objected that his conviction had in fact been reversed by the New Mexico Court of Appeals. (2007 Lawsuit, Doc. 116 at 2.) However, the presiding judge noted that although the appellate court might have reversed and remanded the trial court's denial of Cunningham's motion to suppress, there was no evidence as of September 2010 that the conviction itself had been invalidated. (2007 Lawsuit, Doc. 122 at 2-3.) As such, the district court adopted the magistrate judge's recommendation and dismissed all of Cunningham's § 1983 claims relating to his December 2005 arrest. (*Id.* at 4.) Having dismissed all of Cunningham's federal claims, the district court thereafter declined to exercise supplemental jurisdiction over his state law claims and dismissed them without prejudice. (2007 Lawsuit, Doc. 123 at 10.)

### III.    Reversal of Cunningham's Conviction

Still, as the presiding judge had observed, the New Mexico Court of Appeals had indeed reversed the trial court's denial of Cunningham's motion to suppress on August 2, 2010, the day before the magistrate judge recommended dismissal of Cunningham's claim. (*See* Doc. 1 Ex. B.)

The New Mexico Supreme Court quashed certiorari on the question on May 11, 2011, almost eight months after Cunningham's relevant civil claims had been dismissed. (Doc. 1 Ex. C.) The state district court docket reflects that the New Mexico Court of Appeals mandate in Cunningham's case was filed a week later, and by June 13, 2011, Cunningham's conviction was listed as "Reversed – Conviction Dismissed on Appeal." (Doc. 1 Ex. A.)[2]

## IV.    The Instant Lawsuit

Approximately one year later, on July 11, 2012, Cunningham filed a complaint in New Mexico state court against the City, Hackett, Ryan, and other defendants. (State Lawsuit, Doc. 1 Ex. A.) In that complaint, Cunningham alleges racial profiling, unlawful search and seizure, denial of equal protection of the laws, malicious prosecution, false imprisonment, denial of due process, and mental anguish for loss of liberty and enjoyment of life, all relating to his December 2005 arrest and subsequent proceedings. (*Id.* at 4-5.) Defendants subsequently moved for summary judgment on the claims against them under state law (State Lawsuit, Doc. 12-1 at 20-25 (hereinafter "SJ Motion")), and the parties fully briefed that motion (State Lawsuit, Doc. 12-2

---

[2] Exhibit A is the state district court docket in Cunningham's case, which is readily available from the New Mexico Court's website. *See State v. Cunningham*, D-202-CR-200600007, http://www2.nmcourts.gov/caselookup/app. Similarly, Exhibit B to Cunningham's complaint is a printout of the appellate court's decision on his motion to suppress, which is reproduced on Westlaw, *see State v. Cunningham*, No. 27,884, 2010 WL 4685395 (N.M. Ct. App. 2010) (unpublished), and Exhibit C is a Westlaw printout of the New Mexico Supreme Court's quashing of the writ of certiorari, *see State v. Cunningham*, No. 32,571, 265 P.3d 719 (N.M. May 11, 2011) (table). I take judicial notice of these relevant filings and records. *See Green v. Nottingham*, 90 F.3d 415, 418 (10th Cir. 1996) ("[F]ederal courts may take notice of judicial proceedings in other courts if they have a direct relation to matters at issue." (citation omitted)); *Duhart v. Carlson*, 469 F.2d 471, 473 (10th Cir. 1972) ("A court may take judicial notice of its own records.").

My consideration of these exhibits does not itself affect the nature of Defendants' motions. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. . . . This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record." (citation omitted)); *see also Hall v. Bellmon*, 935 F.2d 1006, 1112 (10th Cir. 1991) (allowing consideration of written documents attached to a complaint in ruling on a motion to dismiss).

at 25-30 (hereinafter "SJ Response"); *id.* at 33-40 (hereinafter "SJ Reply")). The motion remains pending. (*See* Doc. 14 at 4.)

On February 11, 2013, Cunningham filed a complaint with this Court, naming the same Defendants as those in the state case and adding the chief of the APD. (Doc. 1.) In this pleading, Cunningham accuses Defendants of racial profiling, unlawful search and seizure, malicious prosecution and malicious abuse of process, false imprisonment, and conspiracy. (*Id.* at 5-8.) Shortly thereafter, a defendant who is no longer part of this action removed the state lawsuit to this Court (State Lawsuit, Doc. 1) and moved to consolidate it with this case (Doc. 11). The Court granted the motion (Doc. 13) and later dismissed all claims not already discussed here and all parties except for the City, Ryan, and Hackett (Doc. 14).

After the cases were consolidated and the extraneous parties and claims were dismissed, Defendants filed an answer. (Doc. 19.) The next day, however, Defendants also filed a motion to dismiss Cunningham's state law claims, arguing that these claims were time-barred. (Doc. 20.) The substance of this motion almost entirely mirrors Defendants' pending motion for summary judgment. (*Compare* SJ Motion, *with* Doc. 20.) Several weeks later, Defendants filed a second motion to dismiss, this time arguing that several of Cunningham's claims under 42 U.S.C. § 1983 were also barred under the applicable statute of limitations. (Doc. 23.) In response to both motions, Cunningham argues that the statutes of limitations as to both sets of claims have not expired since the presiding judge in the 2007 Lawsuit previously determined that *Heck* applied to his claims. (Doc. 25 at 1-2; Doc. 29 at 2-3.) Defendants acknowledge that judge's previous decision but argue that (a) *Heck* only applies to certain § 1983 claims, not state law claims (Doc. 26), and (b) regardless of the decision in the 2007 Lawsuit, *Heck* does not apply to claims arising prior to the initiation of legal proceedings against Cunningham (Doc. 30).

**DISCUSSION**

Cunningham does not clearly indicate whether he is suing Hackett and Ryan in their personal or official capacities. Nonetheless, I will liberally construe his complaint as alleging claims against the two officers in their individual capacities in light of Cunningham's pro se status, *see Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), as any suit against the officers in their official capacity would be dismissed, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (construing § 1983 actions against state officials acting in their official capacity as being brought against the state itself); *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (generally prohibiting civil actions against a state under the Eleventh Amendment). With that established, I will first examine the timeliness of the challenged § 1983 claims before discussing the timeliness of the challenged state law claims.

**I.      Procedural Posture**

Before addressing the merits of Defendants' various motions, however, I find it necessary to explore the procedural posture of this case. Defendants filed their answer on May 29, 2013 (Doc. 19), yet they filed their motion to dismiss Cunningham's state law claims under Rule 12(b)(6) on May 30, 2013 (Doc. 20), and they filed their motion to dismiss Cunningham's § 1983 claims several weeks later (Doc. 21). Defendants' decision to file these documents in this order presents several problems. First, parties are generally prohibited from bringing more than one motion under Rule 12 raising a defense or objection that was available to them when the first motion was filed. *See* FED. R. CIV. P. 12(g)(2). Second, "[a] motion asserting any [Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed" – in other words, before the answer is filed. *See* FED. R. CIV. P. 12(b). Even the earliest of the motions to dismiss

was brought in contravention of this provision, and as such both Rule 12(b) motions are untimely.

Defendants' errors are compounded by the fact that their motion to dismiss Cunningham's state law claims (Doc. 20) was brought after Defendants had already filed a motion for summary judgment on most of these claims in state court (SJ Motion at 1). Defendants appear to have ignored the Court's earlier admonition that the summary judgment motion has been fully briefed and remains pending (*see* Doc. 14 at 4); they certainly did not withdraw that motion before moving for dismissal of the same claims on virtually the exact same grounds. Although Defendants' decision to file an answer after filing their motion for summary judgment does not preclude consideration of the motion, *see Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1120 (10th Cir. 2006) (citations omitted), their decision to file a subsequent Rule 12(b) motion on essentially the same grounds was improper, *see generally* CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1387 (3d ed. 2013).

Even though Defendants have somehow managed to proceed in almost complete violation of several important provisions of the Federal Rules of Civil Procedure, there is a way out of the mess they have created. Since Defendants' summary judgment motion has been fully briefed by the parties, and since it addresses most of the claims attacked in their motion to dismiss Cunningham's state law claims, the Court may dismiss their Rule 12(b)(6) motion as untimely while still ultimately reaching the propriety of most of the claims at issue. Moreover, a motion for summary judgment "made solely on the pleadings," like the one before the Court, "is functionally the same as a motion to dismiss," and as such the Court may dismiss for failure to state a claim when considering such a motion if that outcome is appropriate. *See, e.g.*, *Fields v. Wise Media, LLC*, No. C 12-05160 WHA, 2013 WL 3812001, at *4 (N.D. Cal. July 19, 2013)

(unpublished) (citing *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968)). Although Defendants' motion to dismiss Cunningham's state law claims should be dismissed as untimely in any event, this course of action should only minimally impact my analysis of the claims at issue since the grounds stated in both motions and the responses and replies thereto are essentially the same.

With respect to Defendants' motion to dismiss Cunningham's § 1983 claims, Rule 12(h)(2) allows the Court to consider a defense of failure to state a claim in a motion for judgment on the pleadings under Rule 12(c). Unlike a Rule 12(b)(6) motion, a motion for judgment on the pleadings may be raised after the pleadings are closed, as long as consideration of the motion would not delay trial. *See* FED. R. CIV. P. 12(c). Accordingly, conversion of this motion to one for judgment on the pleadings is proper. *See, e.g.*, *M & M Fuel Co., Inc. v. United States*, No. 90-1136-K, 1991 WL 12875, at *1 (D. Kan. Jan. 29, 1991) (unpublished) (citing *Brisk v. City of Miami Beach*, 709 F. Supp. 1146, 1147-48 (S.D. Fla. 1989)).

In summary, I recommend that the Court (i) convert Defendants' motion to dismiss Cunningham's § 1983 claims (Doc. 23) to a motion for judgment on the pleadings; (ii) dismiss Defendants' motion to dismiss Cunningham's state law claims (Doc. 20) as untimely; and (iii) proceed to consider Defendants' motion for summary judgment on the state law claims (SJ Motion at 1). Having so recommended, I will proceed to consider the remaining active motions.

## II.     Motion for Judgment on Cunningham's § 1983 Claims

The § 1983 claims that Defendants challenge are found in Counts I and II of Cunningham's complaint, which cover claims of racial profiling and illegal search and seizure in violation of the United States Constitution.[3] (Doc. 1 at 5.) Cunningham also raised these claims

---

[3] Cunningham also alleges these same claims as violations of the New Mexico Constitution. (Doc. 1 at 5.) These state law claims are addressed in the following section of this document.

in Counts I and II of the consolidated State Lawsuit (*see* State Lawsuit, Doc. 1 Ex. A at 4), and

as such these claims are merged for purposes of this analysis. In their motion for judgment on the

pleadings, Defendants argue that these claims are untimely and that the Court therefore cannot

grant Cunningham relief. (*See* Doc. 23.)

    A.  <u>Standard of Review</u>

As noted earlier, a defense of failure to state a claim upon which relief can be granted

may be raised in a motion for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2)(B). However,

such a motion is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *See*

*Nelson v. State Farm Mut. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005). Accordingly, I must

look within the four corners of Cunningham's complaints, accept all well-pleaded factual

allegations as true, grant all reasonable inferences from the pleadings in Cunningham's favor,

and determine if Cunningham is entitled to relief with respect to the challenged claims. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir.

2009) (citations omitted); *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d

1239, 1244 (10th Cir. 2006). Cunningham's pleadings must make it plausible, and not merely

possible, that he is entitled to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242,

1247 (10th Cir. 2008).

In light of Cunningham's pro se status, I will liberally construe the allegations contained

in his complaints and other filings when considering Defendants' motion. *See Northington*, 973

F.2d at 1520-21 (citing *Haines*, 404 U.S. at 520-21). In so doing, however, I must apply the same

legal standards applicable to pleadings drafted by counsel. *Id.*

B. <u>Analysis</u>

Defendants argue that because the claims in question correspond to events from December 2005, the New Mexico personal-injury statute of limitations bars any § 1983 action with respect to the claims filed after December 2008. (Doc. 23 at 5-7.) The principal question raised by Cunningham (Doc. 29), and that on which the continued viability of these claims turns, is whether *Heck v. Humphrey* and its progeny demand a different approach.

i.    *A Brief History of* Heck

Section 1983 provides a cause of action against persons acting under color of state law for the deprivation of rights, privileges, or immunities secured by the Constitution or other laws. 42 U.S.C. § 1983. In *Heck*, the Supreme Court considered a district court's dismissal without prejudice of a pro se prisoner's claim seeking monetary damages for malicious prosecution under § 1983 while his manslaughter conviction was still pending on appeal. 512 U.S. at 478-79, 484. The Supreme Court recognized that "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit." *Id.* at 484-85 (quotation omitted). Analogizing this principle to other § 1983 damages actions that might challenge the validity of an outstanding criminal conviction, the Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has

already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 486-87.

Simply put, if a successful civil claim could imply the invalidity of a conviction, it should be brought as a habeas corpus action and cannot proceed as any other sort of civil action while the conviction is in force. On the other hand, if the claim does not imply the invalidity of a conviction, or if the conviction has already been invalidated, the civil action can proceed. For example, a claim for damages resulting from an allegedly unreasonable search might be able to move forward, even if the search produced evidence that resulted in the prisoner's conviction at criminal trial, since such an action, "even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Id.* at 487 n.7.

Key to understanding the consequences of the Court's holding is its statement later in the opinion regarding the accrual of certain § 1983 causes of action. The respondents in *Heck* had urged the Court to adopt a rule requiring that state remedies be exhausted whenever judgment in a § 1983 action would resolve a necessary element to a prisoner's challenge of his conviction. *Id.* at 488. Rather than imposing an exhaustion requirement on § 1983 claims, however, the Court simply "den[ied] the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489. In other words, a cause of action that would imply the invalidity of an extant conviction or sentence does not accrue until the conviction or sentence is actually invalidated. *See id.* at 490. Therefore, "the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen." *Id.* at 489.

Prior to the Supreme Court's decision in *Heck*, the Tenth Circuit had held that "[c]laims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur," *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991), or at the very latest "when the plaintiff knows or has reason to know of the injury which is the basis of his action," *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Reviewing *Heck* several years later, the Tenth Circuit concluded that the Court's decision had not affected this general rule in most circumstances. *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558 (10th Cir. 1999). The applicability of *Heck* to a plaintiff's claims "depend[s] on their substance," and courts must consider whether *Heck* bars a claim on a case-by-case basis. *Id.* at 557; *see also Garza v. Burnett*, 672 F.3d 1217, 1220 (10th Cir. 2012). Still, because ultimate success on claims of illegal arrest and illegal search and seizure would not necessarily question the validity of a conviction resulting from such search, seizure, and/or arrest, *Heck* will generally not apply to such claims. *See id.* at 558-59.

This position is consistent with that recognized in *Wallace v. Kato*, in which the Supreme Court observed that some § 1983 actions—aside from, for example, malicious prosecution—still accrue before the very existence of a criminal conviction, let alone the setting aside of that conviction. *See* 549 U.S. 384, 394 (2007). When such a claim accrues before conviction, the fact that a conviction might later arise does not prevent the plaintiff from filing suit within the statute of limitations. *Id.* at 393-94. Therefore, if a plaintiff files his § 1983 claims for the first time after his conviction is invalidated, and after the statute of limitations has run, a court should not retroactively toll the limitations period simply because the plaintiff thought the claim would be barred under *Heck* within that limitations period. *See id.* After all, the parties and court would not

actually know whether tolling by way of *Heck* is appropriate until a claim is filed and then determined to threaten the validity of a criminal conviction. *See id.* at 394-95.

The better course, the Court suggested via footnote, would be for a plaintiff anticipating prosecution and conviction to file suit on his § 1983 claims within the presumed statute of limitations. *See id.* at 395 n.4. If the criminal case is still pending, the district court may stay the civil case until the criminal case or its likelihood is ended. *Id.* at 393-94. If the suit is then dismissed under *Heck* due to the plaintiff's conviction, but the conviction is later reversed after the statute of limitations has expired, some form of tolling should be applied to ensure that *Heck* does not "produce immunity from § 1983 liability, a result surely not intended" by the *Heck* bar. *See id.* at 395 n.4. However, the facts before the Court in *Wallace* did not require it to determine how much time such a plaintiff would have to refile his suit after the conviction is reversed or otherwise invalidated. *See id.*

ii.      The *Heck* Bar, Accrual, and the Statute of Limitations

This Court has previously held that application of the *Heck* bar to the § 1983 claims in question here was appropriate, since success on those claims would have impugned Cunningham's then-extant conviction. (*See* 2007 Lawsuit, Doc. 122.) More importantly, Defendants do not argue that Cunningham's claims, if successful, would not have attacked the validity of Cunningham's conviction at the time. As such, I consider that argument waived, and I proceed on the understanding that success on Cunningham's § 1983 claims would have implied that his conviction was improper while that conviction was still in force.

Defendants argue that although the 2007 Lawsuit was dismissed pursuant to *Heck*, the *Heck* bar nonetheless does not apply to the claims in question because these claims accrued prior to the initiation of criminal proceedings against Cunningham. (*See* Doc. 30 at 2-3.) This

conclusion misunderstands the principles of *Heck*. In *Wallace*, the Supreme Court assumed for the sake of argument that even when a claim accrues prior to a conviction, *Heck* would bar the pursuit of that claim until a reversal of the conviction is obtained. *See* 549 U.S. at 394-95 & n.4. In other words, while *Heck* operates to delay accrual of claims that would arise during the pendency of a conviction, the Supreme Court also assumed that *Heck* operates to bar claims that have already accrued by the time a conviction has occurred. *See id.* This assumption lines up squarely with the core logic of *Heck*: plaintiffs cannot challenge the validity of a conviction or sentence in any civil proceeding other than a habeas corpus action. *See Heck*, 512 U.S. at 486-87. By this rationale, even if a claim accrues prior to conviction, *Heck* would still bar the pursuit of that claim once a conviction has been entered if, as here, success on that claim would have challenged the validity of the conviction.

Even though the *Heck* bar was appropriately applied to Cunningham's § 1983 claims while his conviction was in force, the inquiry does not end there. Because Defendants challenge the timeliness of Cunningham's instant lawsuit, the question shifts to when Cunningham's claims accrued, which is determined by reference to federal law. *See Beck*, 195 F.3d at 557; *see also Nelson v. State Farm Mut. Auto Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005) (citation omitted) (finding the accrual date of a claim to be a question of law when, as here, underlying facts are undisputed). Prior to *Wallace*, the Tenth Circuit applied the *Heck* bar "when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction . . . that might result from prosecution of [a] pending charge." *Beck*, 195 F.3d at 557. According to that theory, *Heck* would have barred Cunningham's claims from the date that he was charged, and his claims never would have accrued until his conviction was reversed. *See Garza*, 672 F.3d at 1220 (expressly applying pre-*Wallace* Tenth Circuit precedent).

Under the logic of *Wallace*, however, the fact that the *Heck* bar applied while Cunningham's conviction stood does not mean that the claim accrued after the conviction was reversed. *See id.* at 1220-21 (construing *Wallace*, 549 U.S. at 393-94). The normal accrual of a civil claim, or at any rate the date on which the statute of limitations begins to run, is only delayed if, on that date, a conviction exists that the claim would impugn if it were successful. *See Wallace*, 549 U.S. at 393-94 (construing *Heck*, 512 U.S. at 486-87). Under general Tenth Circuit precedent, and consistent with *Wallace*, Cunningham's claims are presumed to have accrued at the time that the alleged wrong occurred—in this case, the time of his stop, search, and arrest. *See Beck*, 195 F.3d at 558 (citing *Johnson*, 925 F.2d at 1301); *see also Wallace*, 549 U.S. at 394 ("[Section] 1983 actions . . . sometimes accrue before the setting aside of – indeed even before the existence of – the related criminal investigation."). Because Cunningham had not been convicted of any charges at that time, the accrual of his claims was not delayed under *Heck*, even though *Heck* barred him from pursuing those claims once a conviction was entered.

As Defendants correctly point out, the statute of limitations for a § 1983 cause of action is governed by a state's general personal-injury statute. *See Wallace*, 549 U.S. at 387 (citations omitted). In New Mexico, this means that a three-year statute of limitations is applicable to Cunningham's § 1983 claims. *See* N.M. STAT. ANN. § 37-1-8; *Schrader v. Richardson*, 461 F. App'x 657, 660 (10th Cir. 2012) (unpublished). Since Cunningham's claims presumptively accrued on December 14, 2005 – the date of his stop, search, and arrest – the statute of limitations allowed him until December 14, 2008, to bring his § 1983 claims in this Court.

The complicating factor is that Cunningham *did* bring these claims before that date. (*See* 2007 Lawsuit, Doc. 1 at 1, 7 (filed April 26, 2007).) Further, the presiding judge in that matter concluded that *Heck* prevented Cunningham from pursuing these claims since a conviction had

17

been entered against him. We therefore face the situation that the Supreme Court declined to examine in *Wallace*—Cunningham filed suit within the statute of limitations, saw his claims dismissed under *Heck*, obtained reversal after the standard limitations period had passed, and then filed his claims again. *See Wallace*, 549 U.S. at 395 n.4.

*iii.*     *Tolling of the Statute of Limitations*

Without addressing the question in depth, the Supreme Court strongly hinted that equitable tolling may be appropriate in these circumstances, as otherwise "*Heck* would produce immunity from § 1983 liability, a result surely not intended." *Id.* Cunningham also argues that the limitations period was tolled until the date his criminal charges were favorably terminated (Doc. 29 at 3), an argument I liberally construe as seeking equitable tolling. Federal courts generally look to state law to determine whether equitable tolling of a statute of limitations is appropriate in the context of a § 1983 claim, though the Tenth Circuit construes *Wallace* to imply that "federal law might also allow additional equitable tolling in rare circumstances." *See Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citing *Wallace*, 549 U.S. at 394-95).

"Under New Mexico law, the doctrine of equitable tolling is quite limited." *Casanova v. Cent. N.M. Corr. Dep't*, 502 F. App'x 774, 776 (10th Cir. 2012) (unpublished). In this state, courts apply equitable tolling principles "on a case-by-case basis, with an eye toward 'cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control.'" *Slusser v. Vantage Builders, Inc.*, ___ P.3d ___, 2013 WL 3716671, at *5 (N.M. Ct. App. 2013) (quoting *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 66 (2004)). Put another way, a plaintiff must establish two elements to show that equitable tolling is appropriate: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

way." *Id.* at ___, 2013 WL 3716671, at *6 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The record reflects both Cunningham's diligence with respect to pursuing his § 1983 claims and the existence of extraordinary circumstances preventing such pursuit. New Mexico's statute of limitations for § 1983 claims is three years, and Cunningham filed his complaint in the 2007 Lawsuit within 498 days, or a little under a year and a half, of Defendants' alleged wrongdoing. (*See* 2007 Lawsuit, Doc. 1 (filed April 26, 2007).) After his conviction was reversed on June 13, 2011 (*see* Doc. 1 Ex. A at 1), Cunningham filed his complaint in the State Lawsuit, which has been consolidated with this action, a little over a year later (*see* State Lawsuit, Doc. 1 Ex. A (filed July 11, 2012)). Cunningham's pleadings do not appear to have been filed in a dilatory fashion, and his filings reflect an intent to abide by the limitations period. (*See* Doc. 29 at 3.) Further, Cunningham's situation represents the rare circumstance where an absolute bar on the pursuit of his claims was imposed during the limitations period and was lifted after that period had passed. Finally, as the Supreme Court observed, failure to recognize at least a limited period of tolling under such circumstances would lead to the undesirable result of de facto immunity from § 1983 liability for alleged wrongful actors. *See Wallace*, 549 U.S. at 395 n.4. Given that Cunningham has met his burden for establishing the elements calling for equitable tolling, and given the policy concerns expressed by the Supreme Court, I conclude that at least some degree of equitable tolling is appropriate here.

The next question, then, is how much tolling is appropriate. Cunningham appears to contend that the statute of limitations should have been tolled from the date that the alleged wrongdoing occurred to the date that his conviction was reversed. (*See* Doc. 29 at 3.) However, the Supreme Court's decision in *Wallace* squarely counsels against that approach unless a state's

tolling rules would hold otherwise. *See* 549 U.S. at 394-95. Cunningham has not cited to any New Mexico authority which would mandate tolling for that full period, and I am not aware of such authority. *Cf. id.* As such, I find that the statute of limitations continued to run from the date that Cunningham's claims accrued until the date that he filed his complaint in the 2007 Lawsuit.

In light of the Supreme Court's rationale as expressed in *Heck* and *Wallace*, however, I conclude that the statute of limitations should be tolled from the date that Cunningham filed the 2007 complaint until the date that his conviction was reversed. First, the statute of limitations does not count against Cunningham from the time that he filed his 2007 complaint until its dismissal in September 2010. *See Gathman-Matotan Architects & Planners, Inc. v. State Dep't of Fin. & Admin. Prop. Control Div.*, 787 P.2d 411, 414 (N.M. 1990) (holding that the limitations period is equitably tolled upon filing of a complaint unless the case is dismissed for failure to prosecute (citing *King v. Lujan*, 646 P.2d 1243, 1244 (N.M. 1982))).

Second, the imposition of the *Heck* bar after Cunningham's conviction (which occurred after he filed the 2007 Lawsuit) and before its reversal counsels in favor of tolling the limitations period until that reversal. In *Wallace*, the Court refused to equitably toll the period during which the plaintiff's conviction remained in force on the grounds that he waited to file suit until the statute of limitations had passed, then attempted to argue retroactively that his claims would have challenged his conviction had he filed them earlier. *See Wallace*, 549 U.S. at 394-95. Had Cunningham acted similarly, it is apparent that the period of his conviction could not have been tolled while his conviction stood unless state law permitted such tolling. However, the situation here is different: Cunningham timely filed his complaint within the statutory period, the Court informed him that his conviction barred suit, and Cunningham pursued his claims after that bar was removed. Although the Supreme Court expressed concern regarding the lack of notice to the

defendants in *Wallace*, *id.* at 395, such concerns do not apply here; unlike that plaintiff, Cunningham actually brought his claims while the limitations period was running and saw them barred, so Defendants were well aware that Cunningham could bring his claims later if his conviction were reversed. It is reasonable and just, under these circumstances, to toll the statute of limitations for the period in which Cunningham was barred from bringing his suit. *See Kucharski v. Leveille*, 526 F. Supp. 2d 768, 774-75 (E.D. Mich. 2007) (applying equitable tolling in similar circumstances); *see also In re Jones*, 670 F.3d 265, 268 (D.C. Cir. 2012) (citing *Wallace*, 549 U.S. at 395 n.4) (suggesting that equitable tolling might apply if the plaintiff elected to refile his civil complaint since the Supreme Court had recently affirmed the reversal of his conviction).

Having applied equitable tolling to the period that Cunningham's conviction remained in place, I now reach the ultimate question: whether Cunningham's § 1983 claims are timely. As with questions regarding the existence of equitable tolling, the effect of such tolling is determined by reference to state law. *See Chardon v. Fumero Soto*, 462 U.S. 650, 661-62 (1983). New Mexico adheres to the "suspension" approach, in which a plaintiff must file within the amount of time left in the limitations period after tolling ends. *See Ocana*, 91 P.3d at 66 ("Equitable tolling . . . suspends a limitations period."); *Slusser*, ___ P.3d at ___, 2013 WL 3716671, at *3; *see also Chardon*, 462 U.S. at 652 n.1 (describing the different possible effects of equitable tolling, including suspension of a limitations period).

Approximately one year, four months, and two weeks passed between the accrual of Cunningham's claims and the filing of his complaint on April 26, 2007, at which time the statute of limitations was suspended. After the conviction was reversed, the suspension was lifted, and Cunningham had approximately one year, seven months, and two weeks to file suit. Because

Cunningham filed the complaint in his State Lawsuit only one year and one month later, his § 1983 claims were timely under the tolled statute of limitations. *Cf. Sandles v. U.S. Marshal's Serv.*, No. 04-72426, 2007 WL 4374080, at *8 (E.D. Mich. Oct. 18, 2007) (unpublished) (only refusing to apply "the footnote 4 exception in *Wallace*" where, even after tolling, the plaintiff's complaint would have remained untimely).

In conclusion, although the § 1983 claims challenged here accrued at the time that they occurred, the statute of limitations was tolled after Cunningham filed his 2007 complaint and during the time that his claims were barred under *Heck*. Once the *Heck* bar was lifted, Cunningham filed suit within the time remaining under the statute of limitations. For these reasons, I recommend that the Court deny Defendants' motion as to these claims.

### III.   Motion for Summary Judgment on Cunningham's State Law Claims

Defendants have moved for summary judgment on Cunningham's claims under the New Mexico Constitution of racial profiling, illegal search and seizure, denial of equal protection of the law, and false imprisonment. (SJ Motion at 2, 4.) As with the federal claims previously addressed, Defendants argue that the statute of limitations as to Cunningham's state law claims has passed. (*Id.* at 4-5.) Similarly, Cunningham implies that he was barred under *Heck* from pursuing these state law claims until his conviction was overturned. (*See* SJ Response at 5.)

A.  Standard of Review

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in

favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). In determining whether a plaintiff meets this two-part test, this Court must "construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). In ruling on a summary judgment motion, the court may neither make credibility determinations nor weigh the evidence. *Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001) (quotation marks omitted).

As before, I will liberally construe the allegations contained in Cunningham's complaints and other filings in light of his pro se status, although I will apply the same legal standards that would be applied to pleadings drafted by counsel. *See Northington*, 973 F.2d at 1520-21 (citation omitted).

B.  Analysis

Although claims against a state actor for violations of federal law are brought under § 1983, the New Mexico Tort Claims Act ("NMTCA") provides the exclusive means for bringing a tort action against a governmental entity or public employee for violations of state law, provided that immunity from such actions has been waived. *See* N.M. STAT. ANN. § 41-4-17. Defendants do not assert immunity under the NMTCA; rather, they challenge the timeliness of Cunningham's claims under that Act's statute of limitations. Unlike § 1983 actions, a claim under the NMTCA must be brought within two years of the date of the claim's accrual. *See id.* § 41-4-15.

New Mexico law on the accrual of claims is similar to the federal standard: when a plaintiff has discovered an injury and its cause, his claims as to that injury accrue, and the statute of limitations begins to run. *Maestas v. Zager*, 152 P.3d 141, 160-61 (N.M. 2007). Defendants

argue that Cunningham knew of his injury on the date that it occurred or, at the latest, by the date of his arraignment (SJ Motion at 4-5), a point that does not appear to be in dispute. Because Cunningham was arraigned on January 13, 2006, Defendants argue that the statute of limitations as to the claims at issue had expired no later than January 13, 2008. (*Id.*)

Cunningham appears to argue that all of his claims stemming from the December 2005 arrest were dismissed in the 2007 Lawsuit pursuant to *Heck*. (*See* SJ Response at 5.) However, this argument misconstrues both the law and the district court's actions in the 2007 Lawsuit. First, the Supreme Court's holding in *Heck* applies solely to claims brought under § 1983. *See Heck*, 512 U.S. at 486-87. In the absence of any authority to the contrary, it would make little sense to expand the *Heck* bar to cover claims under the NMTCA, since "*Heck* specifically concerned the clash between § 1983 and the federal habeas corpus statute." *See Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). Second, the district court did not dismiss Cunningham's state law claims under *Heck*; it simply refused to exercise supplemental jurisdiction over those claims once all of his federal claims had been dismissed. (2007 Lawsuit, Doc. 123 at 10.) Accordingly, the state law claims were dismissed without prejudice. (*See id.*)

Moreover, even if I were to construe Cunningham's argument as a request for equitable tolling through the period of his conviction, and even if I were to grant that request, his state law claims at issue here would still be untimely under the NMTCA's two-year limitations period. As noted previously, New Mexico adheres to the "suspension" approach to equitable tolling, meaning that the statute of limitations is effectively paused during the tolling period and resumes after tolling ends. *See Ocana*, 91 P.3d at 66. Cunningham filed his first complaint approximately one year, four months, and two weeks after his December 2005 arrest, and approximately one year, three months, and two weeks after his arraignment. If I were to equitably toll the limitations

period during the period of his conviction, Cunningham would have had, at best, an additional two hundred sixty-two days to file suit in state court on his state law claims after his conviction was reversed. Yet Cunningham waited over a year after his conviction was reversed to file his complaint in the State Lawsuit. Thus, the state law claims at issue were untimely whether or not equitable tolling were to apply. *Cf. Sandles*, 2007 WL 4374080, at *8 (refusing to apply equitable tolling to § 1983 claims in similar circumstances).

One final issue remains. In his response to the summary judgment motion, Cunningham points out that Defendants did not address his state law claim of malicious abuse of process. (SJ Response at 3-4; *see also Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31, 33 (N.M. 2007) (recognizing that "malicious prosecution" claims are properly brought as malicious abuse of process claims in New Mexico).) Defendants concede this in their reply, but then go on to argue that Cunningham's malicious abuse of process claim is also untimely. (SJ Reply at 4-5.) In this case, however, it is Defendants who are untimely. Courts routinely decline to consider arguments raised for the first time in a reply brief, as such arguments are deemed to be waived. *See United States v. Wayne*, 591 F.3d 1326, 1332 n.4 (10th Cir. 2010); *Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216, 1237 n.6 (D.N.M. 2012). Although Defendants raise this claim again in passing in their Rule 12(b)(6) motion on Cunningham's state law claims, I have already recommended dismissal of that motion as untimely for reasons previously discussed. Accordingly, my recommendations as to Defendants' summary judgment motion do not reach Cunningham's malicious abuse of process claim under state law.

Because the two-year statute of limitations expired before Cunningham brought the state law claims at issue in Defendants' summary judgment motion, those claims are barred under N.M. Stat. Ann. § 41-4-15. Accordingly, Cunningham's state law claims of racial profiling,

illegal search and seizure, denial of equal protection, and false imprisonment/false arrest are untimely, and I recommend that the Court dismiss these claims with prejudice.

CONCLUSION

For the foregoing reasons, I recommend that the Court:

1) construe Defendants' motion to dismiss Cunningham's § 1983 claims for racial profiling and illegal search and seizure (Doc. 23) as a motion for judgment on the pleadings, and DENY Defendants' motion as to those claims;

2) DENY Defendants' motion to dismiss Cunningham's state law claims (Doc. 20) as untimely; and

3) GRANT Defendants' motion for summary judgment as to Cunningham's state law claims of racial profiling, illegal search and seizure, denial of equal protection, false imprisonment, and false arrest, and thereby dismiss those claims with prejudice (State Lawsuit, Doc. 12-1 at 20-25).

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.